IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| TRISTAN BRADSHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 120-152 |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.   BACKGROUND**

Plaintiff protectively applied for SSI on October 17, 2018, and alleged a disability onset date of May 1, 2018.[1] Tr. ("R."), pp. 18, 257-63, 363. Plaintiff was thirty-two years old at his

---

[1] Plaintiff had previously been found disabled as of April 1, 2003, with a primary diagnosis of epilepsy (major or minor motor seizures), but was determined to no longer be disabled as of October 30, 2014. R. 90, 94, 101.

alleged disability onset date and was thirty-four years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 34, 379. Plaintiff alleged disability based on seizures, brain damage, and depression. R. 349. Plaintiff dropped out of twelfth grade and has not obtained his General Equivalency Diploma ("GED"). R. 54, 56. Plaintiff previously worked odd jobs and as a cook, (R. 355-57), but none of the limited work qualified as past relevant work or substantial gainful activity under the social security regulations, (R. 21, 56-57).

The Social Security Administration denied Plaintiff's 2018 application initially and on reconsideration. R. 106-42. Plaintiff requested a hearing before an ALJ, (R. 148-50), and the ALJ held a telephone hearing on April 14, 2020.[2] R. 41, 43. Represented by counsel, Plaintiff appeared and testified, as did his mother and a vocational expert ("VE"). R. 41-86. On April 24, 2020, the ALJ issued an unfavorable decision on the 2018 application.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 17, 2018, the application date. (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: epilepsy, neurocognitive disorder secondary to epilepsy; intellectual development disorder; and degenerative joint disease of the bilateral shoulders. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except for the following

---

[2]The hearing office had been closed to the public as of March 17, 2020, because of the COVID-19 pandemic. R. 18. Plaintiff expressly waived his right to an in-person hearing. R.18, 41-46.

   limitations:³   no more than occasional overhead reaching with the bilateral upper extremities; no climbing of ladders, ropes, or scaffolds; no exposure to hazards such as unprotected heights and dangerous machinery; no operating a motor vehicle; no work in or around large bodies of water, power lines, or open flames; only simple routine, and repetitive tasks but with the ability to maintain concentration, persistence, and pace for periods of at least two hours at a time, perform activities within a schedule, maintain regular attendance, and complete a normal workday and work week; the ability to perform GED reasoning level two jobs; and no more than occasional interaction with the general public.  The claimant has no past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including binder selector, assembler of electrical accessories I, and garment sorter. (20 C.F.R. §§ 416.969 and 416.969a). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since October 17, 2018, the date the application was filed. (20 C.F.R. § 416.920(g)).

R. 21-34.

When the Appeals Council denied Plaintiff's request for review, (R. 1-5), the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred by (1) formulating an RFC that did not adequately account for the

---

³"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

3

mental limitations of consultative examiner John C. Whitley, III, Ph.D., (2) failing to resolve apparent conflicts between the VE's testimony and the information in the Dictionary of Occupational Titles; (3) improperly evaluating Plaintiff's intellectual and neurodevelopmental disorders under the Listings; and, (4) finding the jobs identified for Plaintiff existed in significant numbers in the national economy.  See doc. no. 17 ("Pl.'s Br."); doc. no. 25 ("Reply Br.").  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 23 ("Comm'r's Br.").

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds

substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

The case should be remanded because the ALJ failed to consider Plaintiff's ability to pay for his epilepsy medicine but relied heavily on Plaintiff's non-compliance with his medicinal regimen in determining Plaintiff did not meet or equal a Listing and evaluating medical evidence when formulating the RFC.

#### A.    **Evaluation of Listings at Step Three**

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that

5

his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

Plaintiff argues the ALJ failed "to mention, let alone evaluate, the criteria of listing 12.11 regarding [Plaintiff's] neurodevelopmental disorder" and further argues the ALJ "improperly evaluat[ed] the criteria of listing 12.05 regarding [Plaintiff's] intellectual disorder." Pl.'s Br., p. 19. The Court disagrees with Plaintiff's position as to Listing 12.11. The ALJ specifically stated he considered Listings 12.02, 12.05, and 12.11, and in making his determination had considered whether the "paragraph B" criteria used to evaluate mental impairments were satisfied. R. 21, 23. As further explained by the ALJ, satisfaction of the "paragraph B" criteria requires a showing of an extreme limitation in one, or marked limitation in two, of four designated areas of mental functioning. As the "paragraph B" criteria are equally applicable to Listing 12.05 and 12.11,[4] in explaining why Plaintiff did not satisfy the criteria as to Listing 12.05, the ALJ simultaneously provided analysis as to why Plaintiff did not meet or equal Listing 12.11. Thus, even if the Court were to assume for the sake of argument the ALJ's explicit statement he

---

[4]Cf. 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.05(B) with id. § 12.11(B).

6

considered Listing 12.11 was insufficient to show he analyzed that Listing, any such error would be harmless because both Listing 12.05 and Listing 12.11 contain the same "paragraph B," criteria the ALJ specifically stated Plaintiff did not meet, (R. 23-24). See Bunn v. Soc. Sec. Admin., Comm'r, No. 2:20-CV-00218-HNJ, 2021 WL 1171537, at *7 (N.D. Ala. Mar. 29, 2021) (rejecting under harmless error analysis claim that ALJ's failure to discuss one Listing containing "paragraph B" criteria was reversible error when ALJ did discuss separate Listing containing "paragraph B" criteria).

The ALJ further explained the limitations in the "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3, and the mental RFC assessment employed at steps 4 and 5 of the sequential process require a more detailed assessment. R. 24. As discussed in more detail below, the state agency psychological consultants upon whom the ALJ relied to assess the "paragraph B" criteria were also relied upon to discount the opinion of Dr. Whitley, and the ALJ erred in failing to consider Plaintiff's inability to pay for medicine in conducting his analysis.

B.     **Evaluating Medical Opinions**

Prior to March 27, 2017, the Commissioner's regulations required the ALJ to give a treating physician's opinion substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Failure to give a treating physician's opinion substantial weight required the ALJ to show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*) ("The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'"). Additionally, the Commissioner's regulations required that the opinions of

7

examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5).

Pursuant to the revised regulations, applicable to claims like Plaintiff's filed on or after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a) (2017); 416.920c(a) (2017).  Elimination of the treating source rule is intended to "eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence," as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).  Courts have recognized the new regulations erect a framework that is intended to be more deferential to the Commissioner. Hallback v. Saul, Case No. 8:20-cv-475-TGW, 2021 WL 1783521, at *4-5 (M.D. Fla. May 5, 2021).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  20 C.F.R. §§ 404.1520c(c)(1)-(5) & 416.920c(c)(1)-(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  Id.  §§ 404.1520c(b)(2) & 416.920c(b)(2); Uresti v. Comm'r of Soc. Sec., No. 2:20-CV-367-MAP, 2021 WL 2644549, at *3-4 (M.D. Fla. June 28,

8

2021). "Under the new rule, the [ALJ] will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." Mackey v. Saul, 2:18-cv-02379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2)), *adopted by*, 2020 WL 376247 (D.S.C. Jan. 23, 2020); see also Cook v. Comm'r of Soc. Sec., No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *4 (M.D. Fla. Apr. 6, 2021) (finding no error in ALJ's rejection of treating source opinion because inconsistent and unsupported by record), *adopted by*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) & 416.920c(c)(1)-(2). Furthermore, the ALJ need not articulate how he or she considered the factors for each medical opinion or prior administrative medical finding from one medical source individually. Freyhagen v. Comm'r of Soc. Sec. Admin., No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing 20 C.F.R. § 404.1520c(b)(1)). "Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis. . . . " 20 C.F.R. §§ 404.1520c(b)(1) & 416.920c(b)(1); see also Cook, 2021 WL 1565832, at *2 (explaining regulations).

Plaintiff does not challenge the applicability of the new regulations as arbitrary, capricious, or in excess of the Commissioner's authority. Indeed, Plaintiff's briefing does not specifically acknowledge his claims are covered by the new regulations, even after the

9

Commissioner repeatedly raised the point in her brief, (Comm'r's Br., p. 5 n.1; pp. 6-7 n.2; p. 8 n.3). Thus, any argument the ALJ improperly evaluated the medical opinions under the old regulations is meritless. See Ashley v. Comm'r, Soc. Sec. Admin., 707 F. App'x 939, 944 n.6 (11th Cir. 2017) (*per curiam*) ("We apply the regulations in effect at the time of the ALJ's decision."). Nevertheless, as discussed in the next section, the case should be remanded because the ALJ failed to consider Plaintiff's ability to pay for his epilepsy medicine but relied heavily on Plaintiff's non-compliance with his medicinal regimen when evaluating the medical opinions in the record.

    **C.**    **The ALJ Relied Heavily on Plaintiff's Non-Compliance with Taking Epilepsy Medicine when Evaluating the Record Evidence But Failed to Give Any Consideration to Plaintiff's Inability to Pay**

As part of his argument the ALJ erred in rejecting certain limitations offered by consultative examiner Dr. Whitley, Plaintiff argues the record demonstrates "that financial constraints impeded Plaintiff's ability to afford medication." Reply Br., pp. 9-10. It is well-settled that poverty may excuse failure to comply with treatment. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012) (*per curiam*); see also Brown v. Comm'r of Soc. Sec., 425 F. Appx 813, 817 (11th Cir. 2011) (*per curiam*) ("[T]he ALJ may not draw an adverse inference from a claimant' lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment."

10

(citation omitted)). "When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration." Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1268 (11th Cir. 2015) (*per curiam*).

Dr. Whitley conducted his psychological consultative examination on July 31, 2018, and opined the test results obtained were "a valid estimation of [Plaintiff's] abilities and functioning." R. 483. Dr. Whitley reported a full-scale IQ of 57, (id.), and opined Plaintiff's history of ongoing seizures "may be contributing to his cognitive struggles and deterioration." R. 484. The ALJ considered Dr. Whitley's findings both when considering whether Plaintiff met a Listing, and as part of his larger review of the medical record used to formulate Plaintiff's RFC. R. 23-24, 28, 31. The ALJ concluded the record "somewhat support(s)" the limitations described by Dr. Whitley, but Plaintiff's education, work history, activities of daily living, and adaptive functioning are inconsistent with Dr. Whitley's limitations regarding academic restrictions and ability to perform work beyond that with "very simply levels of expectations, pressure, and demands." R. 484. Instead, the ALJ pointed to the opinions of state agency consultants and other treatment notes in the record to conclude Plaintiff had a higher capacity for work than that suggested by Dr. Whitley, and the ALJ focused on Plaintiff's "admissions" that he was not taking his anti-epileptic drugs to support the RFC crafted for Plaintiff. Throughout his opinion, the ALJ repeatedly discounted the impact of Plaintiff's seizures in analyzing the Listings and the medical record as a whole because of Plaintiff's "chronic," (R.22), "recurrent," (R. 27), "history of non-compliance" with medication, (R. 30).

In rejecting Dr. Whitley's opinion and the other medical opinions that favored more restrictions than those included in the RFC, the ALJ repeatedly turned back to non-compliance,

11

which he characterized as "a salient factor in this matter." R. 31. In one instance, the ALJ cited medical records of an emergency room visit on July 3, 2018, and stated Plaintiff had not taken his medication in at least two weeks, but he and his family members admitted that it was unknown the last time Plaintiff took his anti-epileptic drugs. R. 27 (citing Ex. B-7F, p. 53 (R. 538)). Notably, the ALJ failed to include the information in the same paragraph of medical records concerning when Plaintiff last took his medicine that he "didn't have insurance to get medications." R. 538; see also R. 550 ("According to the patient's mom, the patient has not been taking is an T epilepticus medication due to defined [sic] that the patient could not afford it."); R. 639 ("Pt. given list of clinics for care after stating that they have attempted to see Dr. Wiley but [were] told that 'they would not see him R/T not having insurance.'"); R. 912 ("This patient cannot reliably obtain levetiracetam because he does not have Medicaid to pay for his medication and mother lacks the income needed to pay for his medication."). The state agency consultants also noted the insurance issue. See, e.g., R. 129, 131 (noting Plaintiff had not been taking medication because he did not have insurance).

Additionally, there are multiple instances in the record of Plaintiff presenting to the emergency room for medication refills after running out of medication or seeking financial assistance at the hospital to pay for medication. R. 561, 613, 619, 628, 803; see also R. 345, 561 (discussing difficulty scheduling appointment with neurologist because of lack of insurance or inability to pay out of pocket). The record reflects, and the ALJ clearly, repeatedly acknowledged, missing medication exacerbates Plaintiff's seizures. The record also reflects the ALJ completely failed to acknowledge, let alone explore, an inability to pay for the medication and/or medical treatment needed to control Plaintiff's seizures. Although the ALJ did not base the disability determination solely on Plaintiff's failure to take his epileptic medicine, that failure

is inextricably intertwined with the evaluation of the entirety of the medical record, including discounting medical opinions on more restrictive limitations than those in the RFC because of Plaintiff's non-compliance with taking prescribed medication. In the face of significant information in the record suggesting Plaintiff's non-compliance may be a result of an inability to pay, and in light of the ALJ's significant reliance on the non-compliance in evaluating the medical record to as to the Listings and to formulate the RFC, the ALJ's failure to acknowledge, let alone discuss, Plaintiff's inability to pay for medication and/or treatment requires remand. See Henry, 802 F.3d at 1268; Beegle, 482 F. App'x at 487; Brown, 425 F. Appx at 817; Ellison, 355 F.3d at 1275.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability application. However, in the absence of *any* reference to Plaintiff's ability, or inability, to pay for treatment, the Court cannot affirm the administrative decision as supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. See Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1066 n.4 (11th Cir. 2021) (offering no opinion on all alleged errors where remand required on two of four issues but instructing on remand, "the ALJ is to reconsider [claimant's] claim based on entire record"). Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and that

the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 19th day of January, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA